## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-KA-00475-SCT

*ABRAHAM HOBSON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/27/97 |
| TRIAL JUDGE: | HON. W. SWAN YERGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | EDWARD J. PETERS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/17/98 |
| MOTION FOR REHEARING FILED: | 9/29/98 |
| MANDATE ISSUED: | 11/19/98 |

**BEFORE SULLIVAN, P.J., ROBERTS AND WALLER, JJ.**

**SULLIVAN, PRESIDING JUSTICE, FOR THE COURT:**

¶1. Abraham Hobson was indicted by the Hinds County Grand Jury during the September, 1995, Term for the murder of James Carson. He proceeded to trial on March 26, 1997. The jury found Hobson guilty of murder, and Circuit Court Judge W. Swan Yerger sentenced him to the mandatory term of life in the custody of the Mississippi Department of Corrections. Hobson appeals to this Court, assigning as error the denial of his motion in limine, introduction of hearsay, failure to grant a mistrial, refusal to admit impeachment evidence against the State's key witness, denial of instructions on identification evidence and manslaughter, inflammatory comments by the prosecutor during closing argument, and the sufficiency of the evidence. Finding no merit to any of Hobson's claims, we affirm his conviction and sentence.

### STATEMENT OF THE FACTS

¶2. In the early morning of May 15, 1995, Frank Stone was working picking up paper at Gains Grocery in Jackson. Stone saw what he described as a white Iroc parked in the middle of the intersection of Lamar and Bell Streets under a street light. Abraham Hobson was leaning against the car. Stone testified that he saw Hobson "come up with" a pistol, and the man in the car passed him a

package. Hobson shot the man in the car, and the man punched the gas and drove off through a red light. The car wrecked in a drug store parking lot, and the police arrived on the scene shortly thereafter. Officer Brent Winstead identified the victim as James A. Carson.

¶3. Officer Lawrence Epps with the Jackson Police Department arrived on the scene of the shooting and spoke with Stone. Stone identified Hobson as the shooter and showed Officer Epps where Hobson lived on Ash Street. Perry McAbee also gave a statement to police stating that he saw Hobson running down the pathway from Gains Grocery after the shooting. Stone also spoke with Officer Winstead, who arrested Hobson at his mother's house on Ash Street. Officer Winstead showed Stone a photo line-up, and Stone identified Hobson as the shooter from the photographs.

¶4. At the time of his arrest, Hobson told police that he had no knowledge of the shooting or the victim. When the officers informed Hobson that they had a witness identifying him as the gunman, he still denied any involvement. However, Hobson later told Officer Winstead that he had talked to a guy in a white Camaro Z28, looking for someone named "D" at about 11:00 p.m.

¶5. Officer Childress arrived on the scene at 12:38 a.m. after the victim's body had been transported. He photographed the white Camaro Z28 and the area around the scene at the drug store parking lot on the southeast corner of Lamar and Fortification Streets. One of the photographs depicted a small handgun on the driver's side floorboard that was found underneath the floor mat. John Dial with the Jackson Police Department Crime Laboratory determined that a projectile recovered from Carson's autopsy was not fired from the .32 automatic recovered from the victim's car. He was also able to determine that the .32 automatic had not been fired recently when it was removed from the crime scene.

¶6. Dr. Rodrigo Galvez, who performed the autopsy on Carson, testified that the cause of death was massive internal bleeding caused by a gunshot wound entering the right arm and going through Carson's chest, through his lungs and heart. There was no tattooing (gunpowder marks) around the gunshot entrance wound, indicating that the gun was more than eighteen inches away from him when it was fired.

¶7. The defense rested without calling any witnesses. Based upon the above evidence presented by the State, the jury found Hobson guilty of murder. Judge Yerger sentenced Hobson to the mandatory term of life imprisonment.

## STATEMENT OF THE LAW

### I.

### WHETHER THE COURT ERRED IN DENYING DEFENDANT'S MOTION IN LIMINE TO EXCLUDE IRRELEVANT EVIDENCE ABOUT UNRELATED CHARGES?

¶8. Hobson was arrested on an outstanding warrant for simple assault, then was charged with murder upon arrival at the police station. Hobson filed a motion in limine on November 15, 1996, to exclude 1) any evidence regarding the simple assault charge, and 2) any evidence regarding the photo line-up. At the motion hearing on the first day of trial, the State only responded to the issue of the photo line-up. Judge Yerger overruled the motion in limine "[b]ased upon the representations of the State."

Essentially, the court ruled only on the motion in limine regarding the photo line-up, and not the simple assault charge. In questioning Officer Winstead about Hobson being advised of his Miranda rights, the prosecutor asked Winstead if he told Hobson what he was being arrested for. When Officer Winstead began answering that Hobson was arrested on a simple assault charge, the defense objected, and the prosecutor clarified that he wanted to know whether they informed Hobson that they wanted to question him about the murder. Judge Yerger made no ruling on the objection, and the statement was allowed without any limiting instruction to the jury. Hobson argues that allowing the jury to hear that he was previously charged with simple assault so prejudiced his case as to result in an unfair trial, requiring reversal.

¶9. It was Hobson's responsibility to secure a ruling on his motion in limine and on his contemporaneous objection to the testimony. He did neither in this case. As a result, he has waived this issue on appeal. *Cotton v. State*, 675 So.2d 308, 314 (Miss. 1996); *Wright v. State*, 540 So.2d 1, 4 (Miss. 1989).

¶10. Aside from being waived, this issue is without merit. The prosecutor was attempting to establish that Hobson was advised of his rights regarding the murder charge, not to elicit any specific information about a prior offense committed by Hobson to prove bad character. Where the witness refers briefly to another crime, and the testimony was not purposely elicited by the district attorney to prove the defendant's character, no reversible error occurs. *Beckwith v. State*, 707 So.2d 547, 582-83 (Miss. 1997). Any resulting prejudice here was minor, and we refuse to reverse based upon this assignment of error.

## II.

### WHETHER THE COURT ERRED IN ALLOWING THE STATE TO INTRODUCE HEARSAY EVIDENCE?

¶11. Over Hobson's objections, Officer Epps was allowed to testify that Stone provided him with the name Abraham when asked about the identity of the shooter and directed him to Hobson's house to assist in his apprehension. Hobson argues that these statements were inadmissible hearsay.

¶12. Stone's statements to Officer Epps fall under a hearsay exclusion in Rule 801(d)(1)(B), allowing admission of a prior consistent statement by a witness subject to cross-examination at trial "to rebut an express or implied charge against him of recent fabrication or improper influence or motive." Miss. R. Evid. 801(d)(1)(B). Stone testified at trial and was subject to cross-examination, during which counsel for the defense accused him of lying on the stand. "Where, as here, the defense raises the claim of fabrication without alleging any particular impermissible motive or source of influence, courts have held that rebuttal testimony by third persons may be admitted to demonstrate the absence of influence or motive to fabricate." *Hosford v. State*, 560 So.2d 163, 168 (Miss. 1990). We find that the State was allowed to elicit testimony from Officer Epps regarding Stone's prior statements implicating Hobson in the murder of Carson to rehabilitate Stone as a witness.

¶13. Hobson also complains about the trial court's admission of Officer Winstead's testimony regarding McAbee's statement to police. During the defense's cross-examination of Winstead, the following exchange took place:

Q. Okay. And really the only thing that you have that supports a case against Abraham Hobson is the statement of Frank Stone; is that correct?

A. And him run -- and Perry McAbee seeing him running from the scene --

Q. -- Well, that doesn't prove anything. There's been no testimony about that.

¶14. After hearing argument from both sides, Judge Yerger allowed Officer Winstead to complete his response. Winstead testified that McAbee gave a statement to police informing them that he witnessed Hobson running down the pathway from the store after the murder. On redirect, the prosecution asked Winstead whom McAbee said that he saw fleeing the scene, and Winstead responded that McAbee saw Hobson. Hobson did not object to the question on redirect. Because Hobson failed to object to the question on redirect, he has waived any potential error on appeal. *Carr v. State*, 655 So. 2d 824, 853 (Miss. 1995).

¶15. It is true that a party cannot open the door to admission of hearsay evidence. *Murphy v. State*, 453 So.2d 1290, 1293-94 (Miss. 1984). However, in this case, the defendant elicited the hearsay himself. "It is axiomatic that a defendant cannot complain on appeal concerning evidence that he himself brought out at trial. . . . As the Court stated pithily in *Reddix v. State*, 381 So.2d 999, 1009 (Miss.), cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980): 'If the defendant goes fishing in the state's waters, he must take such fish as he catches.'" *Fleming v. State*, 604 So.2d 280, 289 (Miss. 1992) (internal citations omitted) (holding that defendant waived error of admission of hearsay testimony when he elicited it himself). We find no error resulting from the admission of Officer Winstead's testimony in this case.

**III.**

**WHETHER THE COURT ERRED BY NOT GRANTING A MISTRIAL WHEN STATE WITNESS FRANK STONE NON-RESPONSIVELY STATED THAT HOBSON HAD USED DRUGS?**

¶16. During cross-examination, Frank Stone gave two unresponsive answers to the defendant's questions in which he alluded to drugs being involved in Carson's murder. When defense counsel asked Stone whom he was with on the night of the shooting, Stone eventually responded, "And then after the shooting or whatever and the man went across the street over there, hit the steps and everything below them buying drugs and stuff, Percy said, Stone, I told you that was gonna happen." Judge Yerger sustained Hobson's objection and instructed the jury to disregard Stone's response. During further cross-examination, when the defendant asked Stone how many times a day he smoked crack, Stone responded, "But now can I rephrase one thing? Did you ask your witness how many times he done smoked while he was doing it?" Hobson objected and moved for a mistrial. Judge Yerger overruled the motion for a mistrial, but again instructed the jury to disregard Stone's statement and received an affirmative response from the jury that they understood his instruction. At the close of the State's evidence, Hobson renewed his motion for a mistrial based upon Stone's testimony that Hobson smoked crack. The court again overruled the motion.

¶17. On appeal, Hobson argues that the testimony was so damaging that the trial court's admonition could not cure the prejudice, making a mistrial necessary. It is presumed that the jury follows the

instructions of the trial court. ***Johnson v. State***, 475 So.2d 1136, 1142 (Miss. 1985). Judge Yerger followed the proper procedure for handling Stone's improper testimony by sustaining Hobson's objections and instructing the jury to disregard the statements. ***Perkins v. State***, 600 So.2d 938, 941 (Miss. 1992). We find that the testimony was not so damaging as to require a mistrial.

## IV.

## WHETHER THE COURT ERRED IN NOT ALLOWING THE DEFENSE TO USE PRIOR CONVICTIONS OF FRANK STONE AS IMPEACHMENT EVIDENCE?

¶18. Stone was previously convicted of business burglary in 1988, possession of cocaine in 1989, and possession of cocaine in 1994. Judge Yerger refused to allow the defense to present evidence of Stone's priors, finding that any probative value was outweighed by the prejudicial effect on the State. Hobson argues on appeal that the court's ruling on the admissibility of this evidence denied him of his right to fully confront and cross-examine witnesses against him.

¶19. Evidence of a prior conviction "punishable by death or imprisonment in excess of one year" is admissible to impeach a witness. Miss. R. Evid. 609(a). Under this rule, Judge Yerger should have allowed Hobson to question Stone about his prior felony convictions. However, we find that any error was harmless based upon the extensive questioning by Hobson into Stone's drug use. Hobson was allowed to elicit testimony from Stone that he smokes crack every day, about two rocks a day or about forty dollars worth. The defense also questioned Stone about his nickname, Stone City, although Stone denied that the name is related to his drug use. Officer Epps testified that he was aware of Stone's drug use. The jury in this case knew that smoking crack is a crime. They did not need to have Stone's prior convictions in front of them to judge the reliability of his testimony. Based upon the extent of the defendant's attack on Stone's credibility as a drug addict, we find that the trial court's refusal to admit Stone's prior convictions amounted to harmless error.

## V.

## WHETHER THE COURT ERRED IN REFUSING D-10?

¶20. Upon the State's objection, Judge Yerger refused Instruction D-10 on identification evidence. Instruction D-10 specifically instructed the jury on weighing the credibility of an identification witness's testimony and the State's burden to prove the identity of the defendant as the perpetrator beyond a reasonable doubt. Hobson argues that this instruction was necessary to fully present his theory of defense, that Stone's identification of Hobson as the shooter was unreliable, to the jury.

¶21. Hobson is correct in stating that he is entitled to have his defense theory presented to the jury within the court's instructions. ***Sayles v. State***, 552 So.2d 1383, 1390 (Miss. 1989). We have reversed where the trial court refused an instruction on the factors which the jury should consider in weighing the reliability of an identification, such as opportunity of the witness to view the perpetrator. ***Warren v. State***, No. 92-KA-1312, 1998 WL 80189, at \*5-6 (Miss. Feb. 26, 1998); ***Davis v. State***, 568 So.2d 277, 280 (Miss. 1990). In this case, however, the offered instruction on identification evidence added nothing to the instructions as a whole. Judge Yerger properly instructed the jury on weighing credibility of witnesses and the burden of the State to prove that the defendant committed each element of the crime charged beyond a reasonable doubt. Instruction D-10 was

merely cumulative, making refusal proper. ***Triplett v. State***, 672 So.2d 1184, 1186 (Miss. 1996); ***Eakes v. State***, 665 So.2d 852, 871 (Miss. 1995).

## VI.

## WHETHER THE COURT ERRED IN NOT GRANTING A LESSER INCLUDED INSTRUCTION?

¶22. Over Hobson's objection, the court granted Instruction S-2 giving the jury the alternative forms of the verdict, which did not include an option for manslaughter. Judge Yerger also refused Instruction D-11 on the elements of manslaughter and Instruction D-13 giving the jury the option of finding Hobson guilty of manslaughter, finding that no evidence was presented to support an instruction on manslaughter. On appeal, Hobson argues that Officer Childress's testimony that the victim had a gun in his car warranted a manslaughter instruction. He contends that the State's failure to prove premeditation supports a manslaughter instruction in this case.

> Lesser-included offense instructions should be given if there is an evidentiary basis in the record that would permit a jury rationally to find the defendant guilty of the lesser offense and to acquit him of the greater offense. . . . A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).

***Welch v. State***, 566 So.2d 680, 684 (Miss. 1990) (internal citations omitted). Instruction D-11, requested by Hobson, outlined the elements of heat of passion manslaughter, defined in Miss. Code Ann. § 97-3-35 (1994). "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Miss. Code Ann. § 97-3-35 (1994).

> Heat of passion has been defined by this Court as:

> In criminal law, a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

***Tait v. State***, 669 So.2d 85, 89 (Miss. 1996) (*quoting* ***Buchanan v. State***, 567 So.2d 194, 197 (Miss.1990)).

¶23. The evidence in this case simply did not support a finding of heat of passion manslaughter. The .32 caliber automatic recovered from the victim's car was found on the driver's side floorboard *underneath* the floor mat, and it had not been fired recently. No testimony was presented showing that Carson ever revealed the gun to his killer or that any argument arose between Carson and the shooter before he was killed. Hobson's argument to that effect on appeal is pure conjecture. Without any such evidence of provocation, no reasonable jury could find that Hobson was guilty of heat of

passion manslaughter. We find that Judge Yerger properly refused Instruction D-11.

## VII.

## WHETHER THE COURT IMPROPERLY ALLOWED THE STATE TO MAKE INFLAMMATORY CLOSING ARGUMENTS?

¶24. Over Hobson's objection, prosecuting attorney Glenda Haynes made the following comments during closing argument:

> And tell the family members of James Carson, Your life mattered. Your life mattered. You were a human being. Your life was taken away from you by someone without any feeling, any caring, standing out there on the corner with a gun just waiting for somebody to come along. . . .Some evil person standing there just waiting to take his life from him --
>
> . . . .
>
> [The defendant] senselessly coldbloodedly took a human being's life, a man who will never walk this earth again, a man who will never take another breath, a man who will never be able to stop and talk to someone, as he did this man, this defendant, and took his life, who will never be able to be with his family, and this is --

On appeal, Hobson argues that these comments were not based on the evidence, but were merely made to inflame the jury by arousing sympathy for the victim's family and unfairly characterizing the defendant.

¶25. "This Court has held: 'So long as counsel in his address to the jury keeps fairly within the evidence and the issues involved, wide latitude of discussion is allowed....'" *Brewer v. State*, 704 So.2d 70, 73 (Miss. 1997) (*quoting **Clemons v. State***, 320 So.2d 368, 371-72 (Miss.1975)). The State's characterization of the murder and murderer in this case as cold-blooded, evil, and unfeeling cannot be called overly inflammatory or outside the evidence presented. The testimony at trial showed that Hobson walked up to Carson's car, leaned inside, had a brief exchange with him, and fired a gun directly at Carson. This Court has previously condoned prosecutorial closing argument equating the victim and her family with the people of the State, commenting on the family's loss, making the "send a message" argument, and comparing the defendant to a "mad dog." *Wilcher v. State*, 697 So.2d 1087, 1110-12 (Miss. 1997). Comparatively, the comments during closing argument in this case are mild. Considering the wide latitude given attorneys in closing argument, we find that these statements by the prosecution did not prejudice the defense in such a way as to warrant reversal.

¶26. Also over Hobson's objection, Ms. Haynes argued, "And you've heard an instruction -- and you will have them back there, and you can read them -- defendant had any self-defense. You've heard no evidence. And you saw the picture, and you can look at it back there --" Later during closing, Assistant District Attorney Bobby DeLaughter stated, "It remains that Frank Stone saw this defendant outside the store near the intersection of Fortification and Lamar that night gun down James Carson period. Now, what evidence have you seen or heard that says that that's not right? Have you heard any testimony --." Hobson argues that these were improper comments on his failure

to testify, in violation of the 5th Amendment.

¶27. Whether prosecutorial comments in closing argument amount to a violation of the defendant's right not to testify must be determined on a case by case basis, examining the comments as they may reasonably be construed. *Jones v. State*, 669 So.2d 1383, 1390 (Miss. 1995). "'Moreover, the State is entitled to comment on the lack of any defense, and such comment will not be construed as a reference to a defendant's failure to testify "by innuendo and insinuation."'" *Id*. (*quoting Shook v. State*, 552 So.2d 841, 851 (Miss.1989); *Alexander v. State*, 610 So.2d 320, 339-40 (Miss.1992)). The State's argument was proper commentary on the lack of evidence contesting Stone's testimony or proving self-defense. None of the statements to which Hobson objects are direct references to his failure to testify. They were comments on the inadequacy of the defense in this case, and therefore within the realm of acceptable closing argument.

## VIII.

## WHETHER THE CONVICTION IS SUPPORTED BY THE EVIDENCE?

¶28. As his final point of error, Hobson claims that the evidence presented at trial was insufficient to support his conviction. Specifically, Hobson contends that the State's key witness, Frank Stone, was unreliable. He also complains about the lack of physical evidence connecting him to the crime. "The standard of review for sufficiency of the evidence is to affirm the conviction unless 'no reasonable hypothetical juror' could reach a guilty verdict under the evidence presented." *Holland v. State*, 705 So.2d 307, 356 (Miss. 1997) (*quoting Pierre v. State*, 607 So.2d 43, 54 (Miss. 1992)).

¶29. The State is required to prove every element of the offense charged beyond a reasonable doubt. *Heidel v. State*, 587 So. 2d 835, 843 (Miss. 1991). As can be seen by the statute under which Hobson was charged, the indictment with which he was charged, and the court's instructions to the jury, the State was required to prove that Hobson (1) killed James Carson, (2) without authority of law, (3) with deliberate design to effect the death of James Carson. Miss. Code Ann. § 97-3-19(1)(a) (Supp. 1997). Frank Stone's testimony that he saw Hobson shoot Carson while Carson sat in his car at the intersection of Lamar and Bell Streets was sufficient to support the jury's guilty verdict in this case. Hobson points to minor inconsistencies in Stone's testimony, his laughing twice on the stand, and his habitual drug use to support his position that Stone was not a credible witness. Whether Stone's testimony was reliable was a question for the jury. "[T]he jury, and not the reviewing court, judges the credibility of the witnesses as well as the weight and worth of their conflicting testimony." *Burrell v. State*, 613 So.2d 1186, 1192 (Miss. 1993). Stone remained constant in his eyewitness account of Hobson being the shooter in this case, and we defer to the jury's determination of credibility.

¶30. Hobson also complains about the failure of police to search Hobson's house for a gun, the State's failure to call Perry McAbee as a witness, and the lack of results from blood analysis of the victim's blood samples, fingerprint analysis from the victim's car, and the gunshot residue test taken from McAbee. The State was not required to present any of this evidence at trial. Hobson does not assert any discovery violations in this case, and he could have introduced any of the above evidence if he found it to be exculpatory. Direct evidence is not necessary to support a conviction, *Conner v. State*, 632 So.2d 1239, 1252 (Miss. 1993), but in this case the State did present direct evidence in the form of Stone's testimony. Stone's eyewitness account was sufficient to support a prima facie case of

murder. We will not reverse based upon the lack of physical evidence presented at Hobson's trial.

## CONCLUSION

¶31. Hobson has failed to present any persuasive assignments of error requiring reversal on appeal. We therefore affirm the conviction of murder and life sentence in this case.

¶32. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AFFIRMED.**

**PRATHER, C.J., PITTMAN, P.J., BANKS, McRAE, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**