BARNES, J., for the Court.
¶ 1. This appeal proceeds from the Circuit Court of Lauderdale County, Mississippi and a judgment of conviction of capital murder and a mandatory sentence of life as a habitual offender without eligibility for parole against Carl Sherman Spur-lock. Finding no reversible error, we affirm.
FACTS
¶ 2. The following facts are taken from testimony presented at trial. Spurlock had been a casual acquaintance of Robert Van Morrison for many years. Both men knew Larry Finch, an antique dealer and the murder victim in this case. Morrison knew Finch previously through the antique business, and Spurlock had been to Finch’s house on more than one occasion prior to the night of the murder to borrow money or to sell flower pots.
¶ 3. On December 2, 2004, Spurlock went to Morrison’s home around 5:00 p.m., left after a brief time, but then returned and suggested that they go to Finch’s home to sell him some “stones.” Spurlock offered to split the money from the sale of the “stones” with Morrison. Morrison stated that he assumed “stones” meant arrowheads. Although Morrison gave Spurlock a plastic grocery bag for the “stones,” he never actually saw them. They walked to Finch’s home, and Finch readily let them in. Spurlock handed Finch the plastic grocery bag, and after Finch realized the bag was empty, Spur-lock began to stab him. Morrison testified that he never actually saw the knife. Spurlock also struck Finch on the head with a stick, which broke.[1] Morrison ran out of the house, and Spurlock caught up with him about a block away. Spurlock told Morrison that he had killed Finch because he caught Spurlock trying to pick his pocket. Spurlock had Finch’s wallet which contained $160; Spurlock gave Morrison $60 and disposed of the wallet in a storm drain. Morrison testified that he later told the police that Spurlock had blood all over him. Morrison suggested that Spurlock clean up in a nearby creek to wash off some of the blood. After he did so, Spurlock left a shirt behind, and they went back to Morrison’s home. Spur-lock took a shower and borrowed clothes to wear. Spurlock then gave Morrison the rest of the clothes he had been wearing, and Morrison disposed of them in a storm drain. Later, after a drug dealer came by *303 Morrison’s house, Spurlock gave Morrison the remaining $20 he owed him, and they headed to the liquor store where they parted ways.
¶ 4. Finch’s body was discovered the next morning in a pool of blood, and the police commenced the investigation of his murder. At the scene of the crime, there were signs of a struggle (broken chair, broken pots), a broken steak knife, and a bloody footprint. No fingerprints were found on the objects confiscated, and lab reports on the blood samples were never completed.
¶ 5. Detective Joe Hoadley, who was patrolling the neighborhood around Finch’s home, recognized Spurlock walking with another unidentified man in the vicinity on the evening of Finch’s murder. When the police received a tip connecting Morrison with the murder, Detective Hoadley stopped by Morrison’s home to question him. Detective Hoadley testified that he knew Morrison and had been to Morrison’s home previously due to suspicious activity which occurred around Morrison’s neighborhood. Although Morrison admitted to being the unidentified man walking with Spurlock, he denied any knowledge of the murder. However, after being questioned on two more occasions, Morrison finally confessed to his knowledge of the murder. He took the police to the storm drain where they recovered the clothes, which were wet but had no blood on them. The police were unable to recover Finch’s wallet. Weeks later, as family members were cleaning out Finch’s home, his cousin discovered a wallet in a decorative Halloween casket located in one of the bedrooms that Finch used for storage. The wallet contained Spurlock’s current driver’s license.
¶ 6. Spurlock and Morrison were both indicted for armed robbery/robbery and capital murder as habitual offenders. Morrison, in exchange for his testimony against Spurlock, pleaded guilty to a lesser charge of robbery and was sentenced to fourteen years. In addition, a pending burglary charge against Morrison was dismissed.
I. Whether the trial court erred in excluding certain evidence of the co-indictee’s prior convictions for impeachment purposes.
¶ 7. The standard of review regarding admission or exclusion of evidence is the abuse of discretion standard. Tate v. State, 912 So.2d 919, 924(¶9) (Miss. 2005). We will not reverse a trial court’s decision “unless a substantial right of the defendant is adversely affected by the improperly admitted or excluded evidence.” Young v. State, 981 So.2d 308, 313(¶ 17) (Miss.Ct.App.2007). Spurlock submits that the trial judge’s granting of the State’s motion in limine, to exclude Morrison’s prior felony convictions that were more than ten years old pursuant to Rule 609(b) of the Mississippi Rules of Evidence, was an abuse of discretion.[2] Rule 609(b) states:
Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its *304 prejudicial effect. However, evidence of a conviction more than ten years old as calculated herein is not admissible unless the proponent gives to the adverse party sufficient advance written notice of intent to use such evidence to provide the adverse party with a fair opportunity to contest the use of such evidence.
(Emphasis added). Therefore, the admission into evidence of “any conviction is subject to the time limits of Rule 609(b).” Johnson v. State, 529 So.2d 577, 587 (Miss. 1988). The rationale is that “[t]he age of a conviction greatly lessens its probative value.” Fuller v. State, 910 So.2d 674, 680(¶ 15) (Miss.Ct.App.2005) (citing Jones v. State, 702 So.2d 419, 422(¶ 17) (Miss. 1997)). Spurlock argues that the trial judge incorrectly interpreted Rule 609(b) when he stated during pretrial motions:
I think that Rule 6.09[sie] says clearly that a witness can’t be impeached by a conviction that is more than ten — when more than ten years has elapsed since the day of conviction or the release of the witness from confinement, whichever occurs last....
And that’s just — the court determines the interest of justice and probative value of the conviction for it. I think that would allow the court to shorten that time, not lengthen the time.
(Emphasis added). The trial court, therefore, refused to allow Morrison to be impeached on his older convictions. The trial judge did allow one prior conviction for burglary and larceny, which was less than ten years old, to be admitted into evidence for impeachment purposes.[3]
¶ 8. We agree with Spurlock that the trial judge misinterpreted the rule and erred in determining that the evidence of all crimes more than ten years old was inadmissible without conducting the balancing test required under Rule 609(b). The trial court automatically excluded the evidence without considering the provision of the rule following the applicable time limit. The language of the rule, “unless the court determines, in the interests of justice, that the probative value of the conviction supported by the specific facts and circumstances substantially outweighs its prejudicial effect,” means that the court must entertain any showing by the proponent that the convictions have probative value. If the proponent makes such a showing, then the trial court must make a probative/prejudicial determination. In the present case, the trial judge pretermit-ted this analysis. In this, the trial judge erred. Nevertheless, we find that, under the facts of this case, the error was harmless.
¶ 9. Before we can consider whether Morrison’s older convictions were admissible under the more exacting standard of 609(b), we must look to see whether they were admissible at all under 609(a). Rule 609(a) of the Mississippi Rules of Evidence reads as follows:
(a) General Rule. For the purpose of attacking the credibility of a witness, (1) evidence that (A) a nonparty witness has been convicted of a crime shall be admitted subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and (B) a party has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the party[.]
The comments to Rule 609 explain that the rule was amended in 2002 to take into consideration Mississippi Supreme Court decisions which “reasoned that when the *305 impeachment by convictions is of a witness other than the accused in a criminal case there is little or no unfair prejudice which can be caused to a party. Thus, the probative value on the credibility of the witness will almost always outweigh any prejudice.”[4] Specifically, the supreme court has interpreted Rule 609(a)(1) as “allowing full impeachment of prosecution witnesses without the requirement of a balancing test, except in extreme situations such as where the prosecution witness has a prior conviction that is both highly inflammatory and completely unrelated to the charges pending against the accused.” White v. State, 785 So.2d 1059, 1062(¶ 10) (Miss. 2001). Under the amended rule, “[cjonvic-tions offered to impeach any [nonparty] witness are admissible unless the court is persuaded by the opponent that the probative value is substantially outweighed by negative factors included in Rule 403.”[5] M.R.E. 609 cmt.
¶ 10. Under the facts of this case, while Morrison’s older convictions may have had some probative value, three of them were identical to the more recent conviction that was admitted. Had the trial judge conducted the appropriate analysis under Rule 609(a), he may well have excluded these older convictions as being merely cumulative of the more recent burglary and larceny conviction. Further, given the age of the excluded convictions and their lessened probative value, the trial court might have also concluded that, under Rule 609(b), their probative value did not “substantially outweigh” even the minimal prejudicial effect.
 ¶ 11. Nevertheless, even if the older convictions should have been admitted under Rule 609, we find that their exclusion only amounted to harmless error. See Rogers v. State, 796 So.2d 1022 (Miss. 2001) (any error in not allowing defendant to impeach the witness with this prior conviction was harmless as testimony demonstrated witness’s extensive drug use); Hobson v. State, 730 So.2d 20 (Miss.1998) (exclusion of admissible prior convictions of a witness is harmless error if the defendant is still allowed the opportunity to elicit testimony to impeach). In the case before us, the trial judge allowed Morrison’s most recent conviction for burglary and larceny to be introduced into evidence. Under Fuller, this more recent conviction would have more probative value than the older convictions, which were excluded. Fuller, 910 So.2d at 680(¶ 15). In addition, the State addressed, in direct examination, that Morrison had been charged with the same crime as Spurlock and had entered a guilty plea to robbery. Morrison, through his guilty plea, admitted to robbery although he maintained that he never intended to rob Finch. Jury instruction C-6 regarding Morrison’s plea with the State was also issued which stated:
Robert Van Morrison has admitted to you that he pled guilty to the robbery of Mr. Finch and that he was an accessory after the fact to the murder of Mr. Finch. The Court instructs you that his testimony should be viewed by you with great care, caution and suspicion and *306 you should give it such weight and credit as you deem it is entitled.
Morrison also admitted at trial to 'having drug issues and questionable acquaintances. The jury was given explicit instructions regarding the nature and motive of Morrison’s testimony and was aware of one prior conviction of burglary and larceny against him. As in Hobson, Spurlock was given an opportunity to examine and present probative evidence to impeach Morrison’s credibility. Jurors are given the duty to resolve any conflicts in testimony and may believe, or disbelieve, any witness. Langston v. State, 791 So.2d 273, 280(¶ 14) (Miss.Ct.App.2001). It appears from the record that it would be unlikely a jury could have mistaken Morrison for an upstanding, law-abiding citizen, even without the introduction of his older convictions.
¶ 12. In addition, Spurlock was able to confront Morrison with a more probative prior conviction that was admitted and his guilty plea. Thus, we conclude if there were any violation of the Confrontation Clause by the exclusion of the older convictions, it was merely harmless error beyond a reasonable doubt. See Smith v. State, 986 So.2d 290 (Miss.2008) (admission into evidence of a statement made by a non-testifying co-defendant in violation of the Confrontation Clause can be harmless error beyond a reasonable doubt where is it merely cumulative of other overwhelming, and largely uncontroverted evidence.)
¶ 13. We find that the trial judge’s refusal to admit all of Morrison’s prior convictions was, at most, harmless error.
II. Whether the trial court erred in denying Spurlock’s motion for a judgment notwithstanding the verdict.
¶ 14. Spurlock’s second argument is that the trial court erred in denying his motion for a JNOV since there existed “no competent evidence” to find Spurlock guilty of the crime of capital murder. Spurlock contends that Morrison substantially impeached his testimony by claiming he did not commit robbery, although he pleaded guilty to robbery. Spurlock submits:
Testimony of an accomplice, even when uncorroborated, can be sufficient to support a verdict of guilt. Catchings v. State, 394 So.2d 869, 870 (Miss.1981). However, “where [accomplice testimony] is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached.” Jones v. State, 740 So.2d 904, 910(¶ 17) (Miss. 1999) (quoting Jones v. State, 368 So.2d 1265, 1267 (Miss.1979)).
Hendrix v. State, 957 So.2d 1023, 1027(¶ 8) (Miss.Ct.App.2007). However, the supreme court recognizes that a person “may be found guilty on the uncorroborated testimony of a single witness.” Doby v. State, 532 So.2d 584, 591 (Miss.1988). Spurlock also points to various contradictions in Morrison’s testimony at trial. We find the contradictions inconsequential, with some being pure speculation on the part of Spur-lock. For example, Spurlock claims that although Morrison said he gave Spurlock a bag for the “stones,” Morrison knew the bag never had arrowheads in it. No testimony or evidence supports this accusation. This Court has held:
In appeals from an overruled motion for JNOV, the sufficiency of the evidence as a matter of law is viewed and tested in a light most favorable to the State. The credible evidence ... consistent with guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only *307 where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McAdory v. State, 772 So.2d 1107, 1109-10(¶ 6) (Miss.Ct.App.2000). It is not the task of this Court to reweigh the facts in every case to, “in effect, go behind the jury to detect whether the testimony and evidence they chose to believe was or was not the most credible.” Langston, 791 So.2d at 280(¶ 14). Viewing the evidence in this case in a light most favorable to the State, we do not find that a reasonable fair-minded juror could have only found the accused not guilty; accordingly, we find no error in the trial judge’s denial of the motion for a JNOV.
¶ 15. THE JUDGMENT OF THE CIRCUIT COURT OF LAUDERDALE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT AS A HABITUAL OFFENDER IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE OR PROBATION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LAUD-ERDALE COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE AND CARLTON, JJ., CONCUR.
ROBERTS, J., NOT PARTICIPATING.

. A broken leg from a piece of furniture was found at the scene of the crime and was entered into evidence.

. Morrison was convicted of three separate counts of burglary and larceny of a storehouse: one in April 1980 and two in December 1981. There was also one conviction of escape in 1985. All sentences carried a punishment of more than one year of imprisonment.

. Morrison was convicted of burglary and larceny of a storehouse in June 1992.

. See White v. State, 785 So.2d 1059 (Miss. 2001) (defendant’s constitutional right to confront witnesses testifying against him was violated as he never had the opportunity to cross-examine the informant regarding his prior convictions); Young v. State, 731 So.2d 1145 (Miss. 1999) (holding that it was an abuse of discretion to exclude evidence of a key witness’s prior conviction for burglary).

. These factors are "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.” (Emphasis added).