IRVING, P.J.,
for the Court:
¶ 1. This appeal arises out of Letarius Crawford’s convictions in the Washington County Circuit Court for murder and aggravated assault. The circuit court sentenced Crawford to life in the custody of the Mississippi Department of Corrections for the murder and to twenty years for the aggravated assault. Feeling aggrieved, Crawford appeals and contends that the *1285 circuit court erred in not granting his requested manslaughter instruction.
¶ 2. Finding no reversible error, we affirm the circuit court’s judgment.
FACTS
¶ 3. Crawford went to the Express Inn in Greenville, Mississippi, on August 29, 2008, and shot Lashaunda Lewis to death in a hotel room. Crawford, who had previously been involved in a romantic relationship with Lewis, allegedly asked Lewis to the hotel to give her some money. Lewis asked her cousin, Dareyn Myrick, to go to the hotel with her, and he complied. Lewis and Myrick traveled to the hotel in a pickup truck that Lewis had borrowed from a friend. According to Myrick, Lewis drove the truck.
¶ 4. Myrick testified that Lewis entered Room 245, where Crawford had asked Lewis to meet him. Seconds later, Myrick heard Lewis scream and saw the curtains in the hotel room rustling. Myrick then heard several gunshots. Almost immediately thereafter, Crawford exited Room 245 and shot at the truck that Lewis had driven to the hotel. Crawford then approached Myrick, who was still sitting in the pickup truck. Crawford asked Myrick who Lewis had been sleeping with, then opened fire on Myrick. Myrick was shot three times, but was able to escape the truck and make it to the hotel’s lobby. During cross-examination, Crawford’s attorney asked Myrick whether Crawford was “excited” during the shooting, and Myrick gave the following response: “I wouldn’t necessarily say excited. But there wasn’t no [sic] kind of stopping sense, you know.” Myrick testified that Crawford initially pursued him toward the hotel’s lobby, but Crawford abandoned his pursuit when Myrick made it to a more public area.
¶ 5. When police officers arrived at the scene, they made contact with Myrick and found Lewis’s dead body inside Room 245. She had been shot four times. No one else was in the room, which was locked when the officers first attempted to enter. Officers discovered bullets, both live and spent, inside and outside the room; cigarette butts in the room’s toilet; beer bottles — some empty and some full; six dollars in cash; an electronic key card for the room; a black nylon gun holster; an open pack of Newport cigarettes; and a cellular telephone.
¶ 6. Dr. Feng Li, who performed Lewis’s autopsy, testified regarding the wounds that she suffered. Dr. Li testified that Lewis suffered a shot to the top of her head that was consistent with being shot from above. Dr. Li stated that Lewis also suffered gunshot wounds to the right side of her forehead, the left side of her chest, and the back of her left forearm. Dr. Li ruled that the manner of Lewis’s death was homicide.
¶ 7. Robert Esters was leaving the Express Inn on the day of the shooting when he saw Lewis’s pickup truck pull into the hotel. Esters testified that he saw Lewis leave the pickup truck and enter a room at the hotel’s parking lot. He stated that he heard gunshots very shortly after Lewis had entered the room; moments later, Esters saw Crawford exit the same room that Lewis had entered. Esters testified that Crawford was watching and pointing a gun at him, but after a few moments, Crawford went to Lewis’s truck and began shooting into the truck. At that point, Esters drove to the front of the hotel, where he entered the lobby and informed the hotel’s staff of the shooting.
¶ 8. Eugina Allen, Lewis’s sister, testified about an incident on July 4, 2008, when her family had gathered for Independence Day. Crawford called Lewis multiple times during the gathering. Lewis let Allen listen to the voice mail messages. *1286 In the messages, Crawford was screaming and asking where Lewis was. Crawford also threatened to kill Lewis. Allen also told the jury that she had spoken on the phone with Crawford about Crawford’s physical abuse of Lewis. Allen estimated that this conversation took place sometime around June 2008. During cross-examination, Allen agreed that Lewis and Crawford had had a very stormy relationship that was “violent.”
¶ 9. Crawford gave a recorded statement to law enforcement after the shooting, and the statement was played for the jury at trial. In the statement, Crawford talked about Lewis calling the day before the shooting to tell him that she had given him Acquired Immune Deficiency Syndrome (AIDS). Crawford expressed that he felt as though Lewis had taken his life away by allegedly giving him AIDS. Crawford stated that he had not been tested for AIDS and that he should have been tested before confronting Lewis. Crawford told the interviewing officer that he remembered shooting Lewis, although he could not remember why he shot her; Crawford stated that he could not remember shooting Myr-ick.
¶ 10. Additional facts, as necessary, will be related during our analysis and discussion of the issue.
ANALYSIS AND DISCUSSION OF THE ISSUE
¶ 11. In Harden v. State, 59 So.3d 594, 608 (¶ 38) (Miss.2011), the Mississippi Supreme Court explained the standard of review that applies to a circuit court’s decision to deny a defendant’s requested jury instructions:
“[J]ury instructions are within the sound discretion of the trial court.[”] Rubenstein v. State, 941 So.2d 735, 787 [(¶ 239)] (Miss.2006) (citing Goodin v. State, 787 So.2d 639, 657 [(¶ 60)] (Miss. 2001)). “A defendant is entitled to jury instructions on his theory of the case whenever there is evidence that would support a jury’s finding on that theory.” [Montana v. State, 822 So.2d 954,] 962 [(¶ 29) (Miss.2002)] (citing Jackson v. State, 645 So.2d 921, 924 (Miss.1994)). However, a trial court may refuse a jury instruction when it is an incorrect statement of law, is fairly covered in other instructions, or has no foundation in the evidence. Ruffin [v. State ], 992 So.2d [1165,] 1176 [(¶ 33) (Miss.2008)]. [An appellate court] reads jury instructions as a whole and not in isolation. Walker v. State, 913 So.2d 198, 234 [(¶ 132)] (Miss.2005) (quoting Parks v. State, 884 So.2d 738, 746 [(¶26)] (Miss.2004)). “[I]f the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.” Montana ..., 822 So.2d [at] 958 [ (¶ 10) ]. . . .
¶ 12. A defendant is entitled to a manslaughter instruction only when a factual basis for the instruction has been established. In Neal v. State, 15 So.3d 388, 408(¶ 52) (Miss.2009), the supreme court explained what must be shown factually to entitle someone to a manslaughter instruction:
Heat-of-passion manslaughter requires “a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter.” Hobson v. State, 730 So.2d 20, 26-27 [(¶ 22)] (Miss.1998) (quoting Tait v. State, 669 So.2d 85, 89 (Miss.1996)). “Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.” Id. at 27 [(¶ 22)]. “The passion *1287 felt by the person committing the act ‘should be superinduced by some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.’ ” Graham v. State, 582 So.2d 1014, 1018 (Miss.1991) (quoting Barnett v. State, 568 So.2d 1877, 1379 (Miss.1990)).
(Emphasis added).
¶ 13. While Crawford would be entitled to any instruction that had a foundation in the evidence and was a correct statement of the law, his requested manslaughter instruction was not supported by the evidence. In his brief, Crawford argues that “something” happened at the hotel that caused Crawford to shoot Lewis to death. However, we do not find that the record supports Crawford’s conclusion that anything happened at the hotel to provoke the attack.
¶ 14. Crawford requested that Lewis come to his hotel room. According to his statement to the police, he was angry that Lewis had allegedly given him AIDS. Crawford told the police that after Lewis entered the room, he hugged her, brought up the AIDS conversation, and then she began screaming at him. Crawford explicitly told the police that he did not remember why he shot Lewis. After shooting Lewis four times, Crawford went outside, where he shot Myrick multiple times. Myrick testified that Crawford did not appear overly excited while he was shooting. Crawford also was in enough of a right mind that he abandoned his pursuit of Myrick after Myrick obtained the relative safety of the hotel lobby.
¶ 15. The only possible acts of provocation that were provided to the jury were Lewis allegedly giving Crawford AIDS and Crawford seeing Lewis at the hotel. As to the former, Crawford learned of the alleged infection the day before the shooting. Even after learning that Lewis believed that she had given him AIDS, Crawford drove from Tennessee to Greenville to confront Lewis. It was apparent from the empty beer bottles and cigarette butts in Crawford’s hotel room that he had been occupying the hotel room for some time before Lewis arrived there.
¶ 16. The provocation for heat-of-passion manslaughter must cause passion or anger “at the time” of the provocation. Neal, 15 So.3d at 408(52). Here, Crawford learned about the alleged AIDS infection a full day before he went to Greenville. There is nothing in the record to indicate that there was a provocation at the time of the shooting; even according to Crawford’s statement, he could not remember why he shot Lewis.
¶ 17. If the acts of provocation were merely seeing Lewis, Myrick, or Lewis’s truck, the circuit court was correct in ruling that those were not sufficient acts of provocation to support a manslaughter instruction. As stated by the Neal court, the provoking act must be “some insult, provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation.” Id. (quoting Graham, 582 So.2d at 1018). Merely seeing a person or a vehicle is not a provocation that would naturally cause rage or passion to an ordinary person.
¶ 18. There was no evidentiary basis for Crawford’s requested instruction. Accordingly, his contention of error is without merit.
¶ 19. THE JUDGMENT OF THE WASHINGTON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, MURDER, AND SENTENCE OF LIFE, AND COUNT II, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS TO RUN CONSECUTIVELY TO THE SENTENCE IN COUNT I, ALL IN THE CUSTODY OF *1288 THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WASHINGTON COUNTY.
LEE, C.J., GRIFFIS, P.J., MYERS, BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL AND RUSSELL, JJ., CONCUR.