GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Ronald Moore was convicted of aggravated assault and armed robbery. On appeal, Moore argues that the trial court erred by denying him the right to re-cross-examine Julius Heard and by allowing testimony regarding an anonymous witness’s statement.
 

 FACTS
 

 ¶ 2. Heard, the victim, was returning home after getting some food from Sonic. When Heard arrived at his home at Camelot Apartments, he was approached by an individual, who identified himself as “Rudy.” Rudy told Heard that he needed a ride to his house in Presidential Hills because he had just had a fight with his girlfriend. Heard refused to give him a ride. Heard exited his vehicle, and Rudy brandished a forty-five-caliber pistol and demanded that Heard take him to Presidential Hills.
 

 ¶ 3. Heard drove Rudy to Presidential Hills. After they arrived, Rudy demanded that Heard turn the car onto James Garfield Circle. After Heard complied with this demand, Rudy shot Heard in the face, and a portion of Heard’s jaw landed in his lap. Heard tried to escape by exiting the moving vehicle. While Heard was attempting to escape, Rudy shot Heard in the “rear,” which caused Heard to fall onto his chest. Rudy straddled Heard’s back and rummaged through Heard’s pockets. He shot Heard three more times in the head and ran away with five hundred dollars of Heard’s money.
 

 ¶ 4. After Rudy left, Heard crawled to his car and dialed 911 on his cell phone. Jackson Police Officer, Kenny Bryant, arrived at the scene. Bryant testified that Heard repeated the name Rudy several times before the paramedics took Heard to the hospital. Detective Charles Taylor arrived after Officer Bryant and started collecting evidence. Detective Taylor lifted several fingerprints from Heard’s car and from items in the car.
 

 ¶ 5. Detective Ford Hayman, who was in charge of this investigation, arrived after Detective Taylor. An anonymous person approached Detective Hayman and told him “that the person responsible for the shooting was Rudy.” Detective Hayman also examined Officer Bryant’s report that mentioned the fact that Heard repeated the name Rudy several times. Detective Hayman used the Jackson Police Department’s database to determine that “Rudy” was probably Ronald Moore, who lived on James Garfield Circle. Detective Hayman created a photo lineup that contained a picture of Moore. At the hospital, Heard identified Moore as his assailant after looking at the lineup. Heard then signed a statement that said Moore was his assailant.
 

 ¶ 6. At the trial, the State called Melvin Jones as its last witness. Jones worked for the Jackson Police Department as a latent print examiner. He testified that he examined the prints lifted from Heard’s car. Jones testified that the fingerprint lifted from the passenger-side rear fender of Heard’s car belonged to Ronald Moore.
 

 ¶ 7. The defense presented no evidence and rested its case.
 

 ANALYSIS
 

 I. Whether Moore was denied a fundamental right to confront a witness against him when the trial court denied him the opportunity to re
 
 
 *874
 

 cross-examine Heard about his probation revocation.
 

 ¶ 8. During cross-examination, Moore’s attorney asked Heard if he had ever been convicted of a crime, and Heard responded “no.” The defense proceeded to impeach Heard with his prior conviction for grand larceny. Heard claimed that this conviction should have been expunged. The trial court recessed so the prosecutor could determine whether or not the conviction had been expunged. The prosecutor discovered that the conviction had not been expunged, and Heard stated that he believed it had been expunged because it occurred many years ago. After Heard finally admitted the conviction, Moore’s attorney concluded his cross-examination.
 

 ¶ 9. During redirect examination, the prosecutor asked Heard several question regarding the conviction. The prosecutor asked Heard about drug testing. Heard responded that he had never failed a drug test or violated his probation. After redirect, Moore’s attorney sought an opportunity to re-cross-examine Heard based upon an affidavit from Heard’s probation officer that alleged illicit drug use by Heard during his probation and a warrant for Heard’s arrest. The trial court denied recross-examination because the court’s order that revoked Heard’s probation was for “technicals” and did not specifically mention drug use. In fact, the trial judge stated he would have allowed re-cross-examination if there had been any evidence that Heard’s probation was revoked because of illegal drug use. The trial judge reasoned that neither the affidavit nor the warrant was evidence of a revocation.
 

 ¶ 10. During an offer of proof, Moore’s attorney impeached Heard using the affidavit. Moore argued that he was denied his right to re-cross-examine Heard. The issue was preserved in a motion for judgment notwithstanding the verdict or, alternatively, a motion for a new trial, where Moore presented the trial court with the hearing transcript that showed Heard’s probation was revoked for illegal drug use. The trial court denied both of these motions.
 

 ¶ 11. On appeal, Moore argues that the trial court should have allowed him to re-cross-examine Heard because the prosecutor opened the door regarding Heard’s failed drug test and revocation. Furthermore, he argues that he was not able to impeach Heard regarding these subjects during cross-examination because of Mississippi Rule of Evidence 609 and because “[ijnquiry into the details of prior convictions is improper.”
 
 Stringer v. State,
 
 500 So.2d 928, 942 (Miss.1986) (citations omitted).
 

 ¶ 12. Moore also relies heavily on
 
 White v. State,
 
 785 So.2d 1059 (Miss.2001). In
 
 White,
 
 the Mississippi Supreme Court held:
 

 To deny the accused the right to explore fully the credibility of a witness testifying against him, is to deny him the Constitutional right of a full confrontation .... Being unable to distinguish the facts in
 
 Young
 
 from the facts in the case sub judice, we reverse White’s conviction and remand for a new trial so that White may introduce evidence of Shedd’s prior felony drug conviction for impeachment purposes.
 

 Id.
 
 at 1063(¶ 12). The decision in
 
 White,
 
 however, is factually distinguishable from this case because it involved the right of cross-examination and not re-cross-examination.
 
 See Hubbard v. State,
 
 437 So.2d 430, 434 (Miss.1983) (holding that the right of cross-examination is legally distinguishable from re-cross-examination).
 

 ¶ 13. Article 3, Section 26 of the Mississippi Constitution of 1890 guarantees criminal defendants the right to cross-
 
 *875
 
 examine witnesses against them, but “re-eross-examination is not allowable as a matter of right, but a matter of trial court discretion.”
 
 Bailey v. State,
 
 952 So.2d 225, 239(¶ 35) (Miss.Ct.App.2006) (quoting
 
 Howell v. State,
 
 860 So.2d 704, 737 (¶ 115) (Miss.2003)). Thus, the standard of review for a trial court’s denial of re-cross-examination is abuse of discretion.
 
 Hubbard,
 
 437 So.2d at 434. Furthermore, the Mississippi Supreme Court has held:
 

 It is proper to
 
 exclude questions as to matters which were not opened up
 
 or brought out on redirect examination, or as to matters already fully covered, or discussed at length on cross-examination, where there is no claim of oversight and no
 
 reason stated why the matter was not inquired into on the cross-examination
 
 proper. 98 C.J.S. Witnesses § 429.
 

 Hubbard,
 
 437 So.2d at 434 (emphasis added). After reviewing
 
 Howell, Hubbard,
 
 and the record in this case, we find that the trial court abused its discretion when it denied re-cross-examination. Here, the State opened the door to issues involving Heard’s conviction and probation, and Moore was not allowed to inquire into this issue on cross-examination because of Mississippi’s evidentiary rules.
 

 ¶ 14. However, we further conclude that the trial court’s decision to not allow re-cross-examination amounts to nothing more than harmless error. “Harmless errors are those ‘which in the setting of a particular case are so unimportant and insignificant that they may, consistent with the Federal Constitution, be deemed harmless, not requiring the automatic reversal of the conviction.’ ”
 
 Bynum v. State,
 
 929 So.2d 312, 314(¶6) (Miss. 2006).
 

 ¶ 15. In
 
 Hobson v. State,
 
 730 So.2d 20, 25-26(¶ 19) (Miss.1998), the Mississippi Supreme Court found that a trial judge abused his discretion by not allowing a criminal defendant to fully cross-examine a State witness regarding his prior conviction for cocaine. The supreme court found that trial court’s decision was harmless error because the witness’s conviction was merely cumulative of other testimony that established the witness used cocaine.
 
 Id.
 
 The supreme court relied heavily on the fact that the defendant was allowed to extensively question the witness regarding his drug use.
 
 Id.
 
 at 26(¶ 19).
 
 Hobson
 
 dealt exclusively with the right of cross-examination; however, this harmless error analysis can also apply to the denial of recross-examination, which unlike cross-examination, is not guaranteed as a right under the Mississippi Constitution or the United States Constitution.
 

 ¶ 16. Mississippi Rule of Evidence 609 allows attorneys to impeach witnesses with evidence of the witness’s criminal conviction. Here, Moore was allowed an extensive opportunity to impeach Heard regarding his drug use and criminal history. The jury also heard evidence that Heard was smoking marijuana on the day of the shooting. The principle of harmless error also applies to Heard’s false statements. Moore had already impeached Heard with his prior conviction. Thus, Moore was allowed to present evidence to the jury that Heard’s testimony might not be completely reliable. The defense had the opportunity to extensively impeach Heard, and any further impeachment on either issue would merely be cumulative.
 

 II. Whether the trial court erred in allowing otherwise inadmissible hearsay, including the use of hearsay from an allegedly anonymous witness who identified Moore as the assailant.
 

 ¶ 17. Moore also argues that the trial court violated his constitutional right to confront a witness against him by allow
 
 *876
 
 ing Detective Hayman to testify that an unidentified person told him that Rudy shot Heard. Detective Hayman testified that he did not know the source’s name and that the person chose to remain anonymous because he was afraid of Moore. The trial court allowed this testimony for the limited purpose of showing why the police included Ronald Moore in a photo lineup. The trial court also instructed the jury that this statement was not to be used to prove the truth of the matter asserted-that Moore shot Heard. Moore argues that allowing this testimony was a violation of the recent holding in
 
 Crawford v. Washington,
 
 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
 

 ¶ 18. We review the trial court’s “rulings on the admission or exclusion of evidence for abuse of discretion. An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party.”
 
 Williams v. State,
 
 960 So.2d 506, 510(¶ 11) (Miss.Ct.App.2006) (citations omitted).
 

 ¶ 19. In
 
 Crawford,
 
 the United States Supreme Court held that the Confrontation Clause of the Sixth Amendment bars “admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.”
 
 Crawford,
 
 541 U.S. at 53-54, 124 S.Ct. 1354. However, the Supreme Court decided not to establish a comprehensive definition for the term “testimonial statement.”
 
 Id.
 
 at 68, 124 S.Ct. 1354.
 

 ¶ 20. Many cases in this state and other states have tried to distinguish between testimonial and non-testimonial statements. We need not address this issue in this case. The Supreme Court in
 
 Crawford
 
 stated, “The [Confrontation] Clause also does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.
 
 See Tennessee v. Street,
 
 471 U.S. 409, 414, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985).”
 
 Crawford,
 
 541 U.S. at 59 n. 9, 124 S.Ct. 1354. The trial judge, during his ruling on this issue, held that the Supreme Court had explicitly stated that
 
 Crawford
 
 does not overturn the holding in
 
 Street.
 
 Therefore, the trial judge found that the unidentified declarant’s statement could come in with a limiting instruction because it was not being used to prove that Moore shot Heard.
 

 ¶ 21. We agree with the trial court’s holding on this issue. In
 
 Street,
 
 the Supreme Court stated:
 

 [t]he State introduced Peele’s confession for the legitimate, nonhearsay purpose of rebutting respondent’s testimony that his own confession was a coerced “copy” of Peele’s statement.... In this context, we hold that the trial judge’s instructions were the appropriate way to limit the jury’s use of that evidence in a manner consistent with the Confrontation Clause.
 

 Tennessee v. Street,
 
 471 U.S. 409, 417, 105 S.Ct. 2078, 85 L.Ed.2d 425 (1985). In the present case, the trial judge allowed the statement for a limited purpose and not to prove that Moore shot Heard. Therefore, as in
 
 Street,
 
 we find that the trial judge’s limiting instruction was sufficient to avoid any confrontation clause violations.
 

 ¶ 22: Notwithstanding the
 
 Crawford
 
 analysis, we find that any error made by the trial court would be considered harmless error because the statement made by the declarant that Rudy shot Heard is merely cumulative of Officer Bryant’s testimony that Heard stated the name Rudy several times before the ambulance took Heard to the hospital.
 
 See Hobgood v. State,
 
 926 So.2d 847, 852(¶ 14) (Miss.2006) (holding that statements ad
 
 *877
 
 mitted in violation of
 
 Crawford
 
 that are duplicative of other testimony are harmless error).
 

 CONCLUSION
 

 ¶ 23. Finding no reversible error in the trial court’s ruling on the above issues, we affirm Moore’s conviction and sentence.
 

 ¶ 24. THE JUDGMENT OF THE CIRCUIT COURT OF HINDS COUNTY OF CONVICTION OF COUNT I, AGGRAVATED ASSAULT, AND SENTENCE OF TWENTY YEARS AND COUNT II, ARMED ROBBERY, AND SENTENCE OF FORTY-TWO YEARS, WITH SAID SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.