# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2020-KA-00507-COA

### CONSOLIDATED WITH
### 2017-CT-01725-COA

**CARLOS BOYD SMITH A/K/A CARLOS SMITH**    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**    **APPELLEE**

DATE OF JUDGMENT:          02/23/2016
TRIAL JUDGE:               HON. ROGER T. CLARK
COURT FROM WHICH APPEALED: STONE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANT:   OFFICE OF STATE PUBLIC DEFENDER
                           BY: HUNTER NOLAN AIKENS
                           CARLOS BOYD SMITH (PRO SE)
ATTORNEY FOR APPELLEE:     OFFICE OF THE ATTORNEY GENERAL
                           BY: BRITTNEY SHARAE EAKINS
DISTRICT ATTORNEY:         WILLIAM CROSBY PARKER
NATURE OF THE CASE:        CRIMINAL - FELONY
DISPOSITION:               AFFIRMED - 09/21/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE WILSON, P.J., McDONALD AND EMFINGER, JJ.

### McDONALD, J., FOR THE COURT:

¶1. In 2016, a Stone County Circuit Court jury found Carlos Boyd Smith guilty of sexual battery. The circuit court sentenced Smith to serve a term of twenty-two years in the custody of the Mississippi Department of Corrections (MDOC). Smith filed a motion for a new trial or, alternatively judgment notwithstanding the verdict (JNOV), which the circuit court denied. Smith appealed, raising the following issues: (1) whether the circuit court erred by allowing testimony from a different minor victim; and (2) whether the circuit court erred by

allowing one of the State's witnesses to give an expert opinion. Finding no error, we affirm.

## Statement of the Facts and Procedural History

¶2.     In 2001, Smith and his wife Sonia adopted K.S.[1] when she was three years old. K.S. lived with the Smiths and their three sons, J.S., N.S, and L.S, next to the church that Smith pastored. Shortly after her adoption, K.S. began receiving mental health treatment at numerous facilities, which continued for several years.[2]

¶3.     In 2004, a Stone County grand jury indicted Smith for one count of battery of M.J., a minor friend of K.S. He ultimately pled no contest to a misdemeanor for indecent exposure.

¶4.     When K.S. turned fourteen in 2011, she disclosed to her therapist Rodney Frothingham at the Mississippi State Hospital that Smith had sexually abused her. K.S. also told Emily Pfaff, her therapist at Youth Villages in Memphis, Tennessee, about Smith's alleged sexual abuse. K.S. stopped living with the Smiths around October 2011.

¶5.     A Stone County grand jury indicted Smith on June 13, 2012, charging him with one count of sexual battery pursuant to Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2006). The indictment alleged that Smith put his penis in K.S.'s mouth on several occasions between May 2005 and August 2011.

¶6.     In September 2014, the State filed a motion to admit evidence of Smith's prior sexual

---

[1] We use initials when referring to the minors involved.

[2] There is no explanation in the record why K.S. was receiving mental health treatment at that time.

offense involving M.J. pursuant to Rule 404(b) of the Mississippi Rules of Evidence.[3]  The State argued that it would present evidence that Smith previously abused M.J. in a manner similar to his abuse of K.S.  Prior to Smith's trial, the circuit court held a hearing on the matter on January 15, 2016.  The State presented evidence, which demonstrated that Smith's past sexual activities with M.J. were similar to those in his charges regarding K.S.  The circuit court ruled that M.J.'s testimony was admissible under Rule 404(b).

¶7.    The trial took place on January 20-21, 2016.  The State presented several witnesses, including K.S., M.J., K.S.'s former therapist Rodney Frothingham from the Mississippi State Hospital at the Oak Circle Center (child and adolescent unit), and K.S.'s former therapist Emily Pfaff from Youth Villages.  At the time of trial, eighteen-year-old K.S. testified that Smith had sexually abused her for years while she lived with his family.  Specifically, K.S. stated that Smith would play a "blindfold game" with her, where he would blindfold K.S., place different items in her mouth, and make her guess what the items were.  During the games, K.S. testified that Smith placed his penis in her mouth.  K.S. also stated that Smith played the "blindfold game" with her childhood friend M.J. once in 2004.  According to K.S., M.J. went into Smith's bedroom to play games.  When M.J. returned to K.S.'s room, M.J. went into the closet and cried.  K.S., who was six at the time, did not know what exactly had occurred but claimed that M.J. said something about Smith molesting her.  Once M.J. left the

---

[3] "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  MRE 404(b)(1)-(2).

house, M.J. never talked to K.S. nor visited the Smiths' residence again.

¶8. After this occurrence, K.S. testified that she did not remember playing the "blindfold game" again with Smith until she was around eleven years old. She stated that she and Smith would play the game on Saturdays in his church office. During one encounter, K.S. testified that she looked under the blindfold and saw Smith's pants at his ankles as he put his penis inside her mouth. K.S. testified that the same thing occurred multiple times until she was thirteen years old in 2010. K.S. further testified that Smith abused her in other ways, such as touching her inappropriately or attempting to make her touch him inappropriately. But she did not tell other people about Smith's abuse because she loved him and was scared of what might happen to him.

¶9. K.S.'s former childhood friend M.J. testified that when she was about six years old, she and K.S. took turns going into Smith's room to play the "blindfold game." After her third or fourth turn, M.J. peeked underneath her blindfold and saw that Smith attempted to put his penis in her mouth. M.J. testified that she told him that she did not feel good and did not want to play anymore. M.J. went home the next day and never visited the Smiths' residence again.

¶10. After voir dire examination of Frothingham and Pfaff, the court allowed them to testify as expert witnesses for the State. Frothingham testified as an expert in the field of child psychological therapy. He testified that he began counseling K.S. in September 2011. Frothingham noted that K.S. appeared to be very anxious when discussing sexual abuse and suffered from a behavioral disorder. On September 30, 2011, he reviewed K.S.'s

psychological evaluation from the referring facility. On the evaluation, he noticed a statement from K.S. that she felt safer at hospitals. When Frothingham asked K.S. about the statement, she began telling him about Smith's abuse, including his abuse toward M.J. K.S. told him that Smith would play the "blindfold game" with her at church and that Smith had put his penis in her mouth. Frothingham also testified that K.S. told him about other instances of Smith's abuse. In Frothingham's expert opinion, K.S.'s characteristics were consistent with a child who had been sexually abused.

¶11. The State's other expert witness, Pfaff, testified as an expert in mental health counseling. After the State proffered her, the circuit court accepted her over the defense's objection pursuant to Rule 702 of the Mississippi Rules of Evidence and ruled that Pfaff would be allowed to offer her expert opinion that the things K.S. told her were consistent with sexual abuse. Pfaff was K.S.'s mental health therapist at Youth Villages, which is a residential treatment center in Memphis, Tennessee. During counseling, Pfaff made several observations about K.S., including her suicidal thoughts when discussing sexual abuse, "triggers" that reminded her of sexual abuse, and generally clear signs of post-traumatic stress disorder (PTSD). Pfaff asked K.S. questions such as, "[H]as anyone ever made you do sexual things you didn't want to do, like touch them, they touched you, or have any kind of sex with you?" K.S. responded yes and told her about Smith's abuse.

¶12. Pfaff testified K.S. told her that she did not remember when Smith's abuse began. But she "remembered it getting weird" when Smith picked her up and slid her in front of his body while they were in the kitchen. K.S. also told Pfaff about the "blindfold game," Smith's

placing his penis in her mouth, and Smith's coming into the room at night and making her guess if she was holding his penis or a toy. Pfaff testified K.S. was diagnosed with bipolar disorder[4] and oppositional defiant disorder.[5] Additionally, in her expert opinion, Pfaff testified that K.S.'s characteristics were consistent with children who had been sexually abused.

¶13. The defense called Smith's sons as witnesses. The sons testified that they never saw any inappropriate behavior between Smith and K.S. and that K.S. and their father were never alone together. The defense also called Ina Maria Riley, the custodian at Smith's church, as a witness. Riley stated that she cleaned for about four hours per day and never saw K.S. with Smith when she was cleaning. Further, she testified that she saw Smith's son playing sports while K.S. would be in her own area, so there were times that the boys were not watching K.S.

¶14. Smith testified in his own defense and denied putting his penis in K.S.'s mouth or touching her inappropriately. Smith also denied any other inappropriate behavior that K.S. alleged. Additionally, Smith denied attempting to put his penis in M.J.'s mouth but admitted and pled guilty to a misdemeanor of indecent exposure. Both sides rested their cases.

---

[4] Bipolar disorder is "an affective disorder characterized by the occurrence of alternating manic, hypomanic, or mixed episodes and with major depressive episodes." *Bipolar disorder*, Stedmans Medical Dictionary (28th ed. 2005), Westlaw STEDMANS 259770 (updated Nov. 2014).

[5] Oppositional Defiant Disorder (ODD) is "a disorder of childhood or adolescence characterized by a recurrent pattern of negativistic, hostile, and disobedient behavior toward authority figure." *Oppositional defiant disorder*, Stedmans Medical Dictionary (28th ed. 2005), Westlaw STEDMANS 260340 (updated Nov. 2014).

6

¶15.    On January 22, 2016, the jury found Smith guilty of sexual battery. The circuit court sentenced Smith to serve a term of twenty-two years in the custody of the MDOC. Smith filed a motion for a new trial or JNOV on February 1, 2016, on the following grounds: (1) that the verdict was against the weight of the evidence; (2) that the evidence was insufficient; (3) that all pretrial motions filed by the defense should have been granted; (4) that the circuit court erred in overruling the defense's objections; (5) that the circuit court erred in admitting testimonial or demonstrative evidence over the defense's objection; (6) that the circuit court erred in refusing all jury instructions sought by the defense; (7) that the circuit court erred in giving jury instructions over the defense's objection; and (8) that the circuit court erred in its evidentiary rulings. The circuit court denied Smith's motions on the same day that they were filed.

¶16.    Smith appealed on May 1, 2020,[6] raising the following issues: (1) whether the circuit

---

[6] Smith failed to appeal within the thirty-day time period pursuant to Rule 4(a) of the Mississippi Rules of Appellate Procedure. Smith, pro se, had filed his PCR motion in the circuit court on June 2, 2017, specifically seeking permission to proceed with an out-of-time appeal under Rule 4(h). The circuit court denied his motion for lack of jurisdiction on July 5, 2017, which this Court affirmed. The Mississippi Supreme Court granted certiorari and reversed, holding that the circuit court had jurisdiction to review the request for an out-of-time appeal under Mississippi Code Annotated section 99-39-5(2) (Rev. 2015). *Smith v. State*, 290 So. 3d 1244, 1247 (¶8) (Miss. 2020). The supreme court reasoned that statute provides that "[a] motion for relief under this article shall be made within three (3) years after the time in which the petitioner's direct appeal is ruled upon by the Supreme Court of Mississippi or, in case no appeal is taken, within three (3) years after the time for taking an appeal from the judgment of conviction or sentence has expired . . . . Miss. Code Ann. § 99-39-5(2)."

Accordingly, the Supreme Court found that Smith was acting within the three-year window described in section 99-39-5(2). The Supreme Court remanded with instructions for the circuit court to consider whether Smith satisfied the procedural requirements for an out-of-time appeal. Thereafter, the circuit court allowed Smith to file an out-of-time of appeal on April 23, 2020.

court erred in allowing the testimonial evidence of a different minor victim; and (2) whether the circuit court erred in allowing one of the State's witnesses to give an expert opinion. After reviewing the record, we find that the circuit court did not err, and we affirm its rulings.[7]

**Standard of Review**

¶17.   The admission of evidence is reviewed under the abuse-of-discretion standard. *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016) (citing *Smith v. State*, 136 So. 3d 424, 431 (¶17) (Miss. 2014)). "Evidentiary rulings are affirmed unless they affect a substantial right of the complaining party." *Johnson v. State*, 204 So. 3d 763, 766 (¶7) (Miss. 2016) (quoting *Sewell v. State*, 721 So. 2d 129, 138 (¶50) (Miss. 1998)). "An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party." *Martin v. State*, 266 So. 3d 652, 667 (¶33) (Miss. Ct. App. 2018) (quoting *Moore v. State*, 1 So. 3d 871, 876 (¶18) (Miss. Ct. App. 2008)).

¶18.   The admission of expert testimony is also reviewed under the abuse-of-discretion standard. *Clark v. State*, 315 So. 3d 987, 993-94 (¶6) (Miss. 2021). "Therefore, the decision of a trial court will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Id*. (quoting *Miss. Transp. Comm'n v.*

---

[7] On August 17, 2020, Smith filed a motion to consolidate the current matter with his previous PCR appeal, *Smith v. State*, 290 So. 3d 1244 (Miss. 2020), to avoid duplicate filings. On September 1, 2020, this Court found that because the current appeal stemmed from our Supreme Court's decision, and both the previous and current appeal share the same procedural history, the motion to consolidate them for *record purposes only* was well taken. Therefore, the record from Smith's prior appeal will only be used to establish the procedural history and testimonial history.

*McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003)).

## Discussion

I.    **Whether the circuit court erred by allowing the testimonial evidence of a different minor victim.**

¶19.    Smith argues that the circuit court erred by allowing the testimony of his past sexual abuse of M.J., one of K.S.'s former childhood friends.  Specifically, he argues that the evidence was used to show that he had a propensity to commit the crime charged, that it was substantially more prejudicial than probative, and that the circuit court provided an inadequate limiting instruction.  We disagree.

¶20.    Rule 404(b)(1) of the Mississippi Rules of Evidence prohibits the use of prior-bad-acts evidence to prove a person's character to show that he acted in conformity therewith.  But Rule 404(b) evidence may be used for another purpose, such as to show "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." MRE 404(b)(2).  "Before admitting prior-bad-acts evidence, a trial judge should filter the evidence through Mississippi Rule of Evidence 403 and determine whether the evidence's probative value outweighs its prejudicial effect to the defendant." *Shoemaker v. State*, 256 So. 3d 604, 613 (¶36) (Miss. Ct. App. 2018) (citing *Pritchett v. State*, 201 So. 3d 1095, 1099 (¶10) (Miss. Ct. App. 2016)).  "Where the evidence's probative value outweighs its prejudice, the trial judge may admit the evidence." *Id.*  "In the context of child-sexual-abuse cases, even evidence of remote past sexual-abuse allegations may be admitted for a proper purpose under Rule 404(b), especially when coupled with an appropriate limiting instruction to the jury." *Id.* (citing *Westbrook v. State*, 109 So. 3d 609, 615 (¶18) (Miss. Ct.

9

App. 2013)).

¶21. "The weighing and balancing task required by Rule 403 asks only that a judge rely on his/her own sound judgment." *Masters v. State*, 285 So. 3d 192, 197 (¶16) (Miss. Ct. App. 2019) (quoting *O'Connor v. State*, 120 So. 3d 390, 398 (¶20) (Miss. 2013)). "[Even] if a trial court determines that the prejudicial effect of evidence substantially outweighs its probative value, it is not obligated to exclude the evidence, but may do so at its discretion." *Id*.

¶22. In *Derouen v. State*, 994 So. 2d 748 (Miss. 2008), our Supreme Court ruled that in cases involving a sexual crime against a child, the evidence of a defendant's prior sexual abuse is no longer per se inadmissible. *Id*. at 756 (¶20). Further, "evidence that is properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction to the jury, should not be considered per se error." *Id*.

¶23. In the case at bar, the circuit court properly admitted M.J.'s testimony. First, rather than showing that Smith had a certain character and acted in conformity with that character, M.J.'s testimony was used for a legitimate, alternative purpose. M.J. testified that Smith would play the "blindfold game" with her as he did with K.S. and that during the game, he attempted to put his penis in her mouth. The Mississippi Supreme Court has held that "when the sexual acts bear overwhelming similarities to the conduct at issue, they are undeniably admissible under Rule 404(b) as both motive and as evidence of a common plan, scheme, or system." *McGrath v. State*, 271 So. 3d 437, 441 (¶16) (Miss. 2019) (quoting *Green v. State*, 89 So. 3d 543, 550 n.19 (Miss. 2012)). Therefore, the evidence was properly admitted as a

10

legitimate alternative purpose pursuant to Rule 404(b)(2).

¶24.    Second, the circuit court properly filtered the testimony through Rule 403 of the Mississippi Rules of Evidence and determined that the probative value outweighed the prejudicial effect.  This Court has stated that "[s]ex crimes against children are furtive, secret events usually lacking evidence other than the conflicting testimony of the defendant and the victim.  The only viable proof of motive, intent, plan, knowledge, identity or absence of mistake or accident may be the pattern of abuse suffered by others at the hands of the defendant." *Derouen*, 994 So. 2d at 754-55 (¶17) (quoting *Lambert v. State*, 724 So. 2d 392, 395 (¶14) (Miss. 1998) (Mills, J., dissenting, joined by Roberts and Smith, JJ.), *overruled by Derouen*, 994 So. 2d at 756 (¶20)).  Therefore, M.J.'s testimony, which showed a pattern and plan of Smith's abuse, was more probative than any prejudicial effect.

¶25.    Finally, the circuit court provided the following limiting instruction to the jury:

### Jury Instruction No. C-8

You are instructed that the testimony of other acts as to a child which is not the subject of the indictment being charged in this case is not evidence that the defendant actually committed the crime charged herein or that the defendant has a certain character and he acted in conformity therewith. Rather, the evidence, if proven beyond a reasonable doubt, may be considered, if you so determine, as to the defendant's motive, opportunity, intent, preparation, and/or plan to commit the act for which he stands charged.

The instruction clearly states that M.J.'s testimony was not evidence that Smith committed the sexual battery as it relates to K.S. because he was acting in conformity with a certain character.  Rather, the jury was instructed on the permissible purposes of M.J.'s testimony regarding Smith's alleged sexual acts toward K.S., such as his motive and intent to play the

11

"blindfold game" and his opportunity, preparation, and plan to commit the sexual battery of

K.S. at his home and at the church. The evidence was only to be considered for permissible

purposes, as listed in the jury instructions, pursuant to Rule 404(b)(2) of the Mississippi

Rules of Evidence.[8]

¶26. Because the evidence of M.J.'s testimony was presented for legitimate, alternative

evidentiary purposes for Smith's prior bad acts under Rule 404(b), filtered through Rule 403,

and the jury was provided a limiting instruction as required by *Derouen*, we find that the

circuit court did not abuse its discretion in admitting evidence of Smith's prior bad acts.

> **II.** **Whether the circuit court erred by allowing one of the State's witnesses to give an expert opinion.**

¶27. Smith argues that the circuit court erred by allowing Emily Pfaff, who was K.S.'s

mental health therapist, to testify as an expert. This issue is without merit.

¶28. Opinion evidence in areas requiring specialized knowledge may only be given by an

expert pursuant to Rule 702 of the Mississippi Rules of Evidence. The Mississippi Supreme

Court has stated that "trial courts are vested with a gatekeeping responsibility to determine

whether the expert testimony presented is both relevant and reliable." *Clark*, 315 So. 3d at

996 (¶17). "A trial judge's determination as to whether a witness is qualified to testify as an

expert is given the widest possible discretion and that decision will only be disturbed when

---

[8] Smith argued that the Mississippi Supreme Court has admonished prosecutors for offering prior-bad-acts evidence based on a rote recitation of Rule 404(b)(2)'s permissible alternative purposes. *Cole v. State*, 126 So. 3d 880, 886 (¶27) (Miss. 2013). "[P]rosecutors should clearly present the alternative purpose for the evidence." *Id*. But in this case, the jury instruction only included five permissible purposes under Rule 404(b), which were given to present the alternative purpose of the evidence.

there has been a clear abuse of discretion." *Smith v. State*, 925 So. 2d 825, 834 (¶23) (Miss. 2006) (quoting *Logan v. State*, 773 So. 2d 338, 346-47 (¶31) (Miss. 2000)).

¶29.   Rule 702 of the Mississippi Rules of Evidence governs the admission of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

MRE 702.   "[A] two-pronged inquiry is [required] when evaluating the admissibility of expert testimony: (1) is the witness qualified, and (2) is the testimony relevant and reliable?" *Thompson v. Holliman*, 283 So. 3d 718, 722 (¶12) (Miss. 2019) (quoting *McKee v. Bowers Window & Door Co.*, 64 So. 3d 926, 932 (¶17) (Miss. 2011)).

¶30.   First, the circuit court found Pfaff to be qualified based upon her education, training, and experience.  Pfaff received a bachelor's degree in psychology and her master's degree in mental health counseling.  At the time of trial, Pfaff had three years of experience providing mental health counseling and behavioral health therapy to adolescents and teenagers at two mental health treatment facilities.  Pfaff also estimated that she had treated between fifty and seventy-five children, including sexually abused children.  Further, Pfaff was trained in behavioral treatments for traumatic experiences including sexual abuse.  She was trained in (1) the Adolescent Community Reinforcement Approach (A-CRA), (2) Anger Replacement Therapy (ART); and (3) Trauma Focused Cognitive Behavioral Therapy

13

(TFCBT), which are all behavioral treatments for youth who have had traumatic experiences and abuse, including sexual abuse. At the time of the trial, Pfaff was a behavioral health therapist at a treatment center in Blackwood Falls, Wisconsin. According to Pfaff, her official title was a Licensed Professional Counselor, In-Training (LPC-IT).[9] While this was Pfaff's first time testifying as an expert witness in-person, she had previously served as an expert witness for court matters over the phone. During Pfaff's voir dire, it was clear that she was only going to testify about the conversations that she had with K.S., her observations of K.S., her diagnoses of K.S., and her opinion on whether K.S. demonstrated characteristics of sexual abuse. Therefore, Pfaff was qualified as an expert in mental health counseling.

¶31. Second, the circuit court found Pfaff's testimony to be both relevant and reliable in this case. Evidence is relevant when "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the case." MRE 401. Pfaff treated K.S. for approximately six months at the Youth Villages as her behavioral health therapist. During their sessions, Pfaff made several observations and diagnoses about K.S., including mental and behavioral disorders. Because K.S. also disclosed that she had been sexually abused, Pfaff's testimony was relevant for the

---

[9] The defense argued that Pfaff admitted she was not a licensed professional counselor. However, under Wisconsin statutory law, LPC-ITs and LPCs "may [p]ractice professional counseling or designate himself or herself as a professional counselor or use or assume the title 'professional counselor,' 'professional rehabilitation counselor,' 'vocational rehabilitation counselor,' 'rehabilitation counselor,' or any other title or designation that represents or may tend to represent the person as a professional counselor unless the person is licensed as a professional counselor under this chapter." Wis. Stat. Ann. § 457.04 (Rev. 2006). After taking the national exam, Pfaff would not have to include "in-training" as a part of her designation. Notwithstanding the fact that Pfaff had not yet taken the national exam by the trial date, her experience qualified her to serve as an expert witness.

case.

¶32. Furthermore, Pfaff's testimony was reliable pursuant to Rule 702 of the Mississippi Rules of Evidence. "Testimony is reliable when it is based upon sufficient facts or data, is the product of reliable principles and methods, and when the witness has applied the principles and methods reliably to the facts of the case." *Willie v. State*, 204 So. 3d 1268, 1273 (¶12) (Miss. 2016) (internal quotation marks omitted). Pfaff testified that she began counseling K.S. in group therapy, individual therapy, and family therapy. Additionally, she testified that she used several methods within the professional mental health community to determine K.S.'s diagnosis, including the "universal timeline," the UCLA Trauma Northshore checklist, and a PTSD index, which are all used for the assessment of traumatized children and to determine the best approach for K.S.'s behavioral therapy. Pfaff then conducted a trauma-based cognitive behavioral therapy. Therefore, Pfaff's opinion was based on reliable principles and methods used in the field of counseling and treating abused children.

¶33. Finally, "[w]hile an expert may not opine that an alleged child sex-abuse victim has been truthful, the scope of permissible expert testimony under Mississippi Rule of Evidence 702 includes an expert's opinion that the alleged victim's characteristics are consistent with those of children who have been sexually abused." *Lawson v. State*, 292 So. 3d 266, 276 (¶32) (Miss. Ct. App. 2019) (quoting *Elkins v. State*, 918 So. 2d 828, 832 (¶9) (Miss. Ct. App. 2005)). The Mississippi Supreme Court has stated that "[e]vidence that the interviews were credible, i.e. capable of being believed, [i]s properly admitted." *Smith*, 925 So. 2d at

15

838 (¶32) (emphasis omitted). Here, Pfaff remained within the scope of Rule 702 in giving her expert opinion that K.S. had characteristics that were consistent to those of children who have been sexually abused.

¶34. Because Pfaff was qualified as an expert witness, and her testimony was both reliable and relevant to the sexual abuse case, the circuit court did not abuse its discretion in allowing Pfaff to give her expert opinion that K.S.'s characteristics were consistent with a sexually abused child.

### Conclusion

¶35. Finding that the circuit court did not abuse its discretion in allowing M.J.'s testimony and allowing Pfaff to give her expert testimony, we affirm Smith's conviction and sentence.

¶36. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND EMFINGER, JJ., CONCUR. SMITH, J., NOT PARTICIPATING.**