# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00709-COA

**MARCEL SMITH A/K/A MARCEL SMITH, JR.**          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/13/2022 |
| TRIAL JUDGE: | HON. FORREST A. JOHNSON JR. |
| COURT FROM WHICH APPEALED: | WILKINSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WAYNE DOWDY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: CASEY BONNER FARMER |
| DISTRICT ATTORNEY: | SHAMECA SHANTE' COLLINS |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/31/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., GREENLEE AND EMFINGER, JJ.**

**EMFINGER, J., FOR THE COURT:**

¶1. Following his trial on June 7-8, 2022, in the Circuit Court of Wilkinson County, Mississippi, Marcel Smith was convicted of conspiracy to commit murder (Count I) and the first-degree murder of Carl Newton (Count II). He was sentenced to serve a term of twenty years in the custody of the Mississippi Department of Corrections (MDOC) for conspiracy and a term of life imprisonment for murder. The sentences were ordered to run concurrently. Smith raises two issues on appeal. First, he contends that the trial court erred by failing to grant a continuance on the first morning of trial after the State untimely produced a notice of expert testimony. Second, Smith alleges that the trial court erred by allowing Officer Ruston Cavin to testify as a lay witness at trial regarding "cell phone location technology."

## FACTS AND PROCEDURAL HISTORY

¶2.     The chain of events leading to the death of Carl Newton began on Thanksgiving Day in 2017 when Newton shot Nathan Lollis. Newton was originally charged with aggravated assault as a result of the shooting, but Lollis later agreed to reduce the charge to simple assault. While the simple assault charge against Newton was apparently resolved in justice court, the present case is about Lollis' exacting his revenge against Newton. Ultimately, on the morning of July 17, 2018, Newton's body was found in a wooded area near St. Luke's Church on Sam Leake Road in Wilkinson County. At trial, the parties stipulated that the cause of Newton's death was multiple gunshot wounds and that the manner of death was homicide.

¶3.     Law enforcement began investigating and quickly developed persons of interest. First, law enforcement talked with Michael and Cory Anderson (the Anderson brothers). Their statements led law enforcement to Marcel Smith. Smith gave a written statement to law enforcement on July 22, 2018, that was introduced into evidence during the State's case-in-chief. Smith also testified at trial in his own defense. According to Smith, on July 16, 2018, he drove to Natchez in a gray Chevrolet Malibu to attend drug court. On his way back to Woodville, Smith said he got a call from Newton who asked Smith to pick him up from his sister's home. After Smith picked up Newton, they went to a store, and Newton bought some beer. Smith said that he and Newton originally were going to his aunt's home to finish a construction job but Smith's aunt told them not to come over because she was tired. Smith testified that Newton did not want to come home with him, so Newton got out of the car.

2

According to Smith, he then drove back by Newton's sister's home and told Newton's nephew LaSalle Bolden Jr. that Newton would be home later and LaSalle would need to let Newton in the house. Smith claims that he then went home for the night.

¶4.     The testimony of Johnnie Lee Spears conflicted with Smith's account of the evening. Spears was living at Lollis' house at the time. The night before Newton was found dead, Spears said that Smith showed up at Lollis' house driving a pickup truck, and Newton was a passenger in the truck. Smith got out of the truck and knocked on Lollis' door. Spears could hear Smith and Lollis talking as they went inside Lollis' house. Newton remained in the truck. After a few minutes, Smith came out of the house, got back in the truck, and drove off. Spears testified that was the last time he saw Newton alive. However, later that night, Smith came back to Lollis' house in a car, instead of a pickup truck. Spears did not see Newton. Smith went into the house and talked to Lollis for a while and then left.

¶5.     In the days leading up to Newton's death, the evidence shows that Lollis spoke with the Anderson brothers several times. At first, Lollis spoke with Michael about killing Newton for Lollis, but Michael told Lollis he needed to find someone else to do that. They testified that Lollis threatened them and coerced them to be a part of a plan to "rough up" Newton because Newton had shot Lollis on the previous Thanksgiving. On July 16, 2018, Lollis contacted the Anderson brothers, picked them up, and took them to an area of Shiloh Church on Natchez Street in Woodville. Lollis told them to wait there for Newton to arrive, at which point they were to assault Newton.

¶6.     According to the brothers, they waited in the church parking lot until Smith arrived

3

in a pickup trip with Newton and Charles Lee Wells. The Anderson brothers testified that they took Newton out of the truck and "roughed him up," but Wells told them that they were not "doing it right." Wells then pulled out a pistol and the Anderson brothers "took off running." The brothers heard gunshots and never saw Newton again.

¶7.     During the course of the investigation into Newton's death, Officer LaShanda Grayson obtained a search warrant for Smith's and Newton's cell phone records from AT&T. The phone records included longitude and latitude coordinates for the location of the two cell phones on the day of Newton's death. The phone records were admitted into evidence at trial. Officer Ruston Cavin, an investigator with the Adams County Sheriff's Office, took the longitude and latitude coordinates included in the AT&T phone records and entered the coordinates on Google Earth program on his computer. Google Earth then utilized that information to generate a map with the plotted locations of both Smith's and Newton's cell phones. Testifying as a lay witness, Officer Cavin stated that the location of Smith's and Newton's phones matched for most of the night that Newton was killed.

¶8.     The jury found Smith guilty of both counts in the indictment. Smith filed a motion for judgment notwithstanding the verdict or a new trial, which the trial court denied, and a notice of appeal.

### STANDARD OF REVIEW

¶9.     "This Court reviews the denial of a continuance under an abuse[-]of[-]discretion standard and will not reverse a denial unless manifest injustice has resulted from the failure to grant a continuance." *Baldwin v. State*, 757 So. 2d 227, 231 (¶12) (Miss. 2000). Similarly,

4

in *Smith v. State*, 326 So. 3d 510, 517 (¶17) (Miss. Ct. App. 2021), this Court held:

> The admission of evidence is reviewed under the abuse-of-discretion standard. *Boggs v. State*, 188 So. 3d 515, 519 (¶9) (Miss. 2016) (citing *Smith v. State*, 136 So. 3d 424, 431 (¶17) (Miss. 2014)). "Evidentiary rulings are affirmed unless they affect a substantial right of the complaining party." *Johnson v. State*, 204 So. 3d 763, 766 (¶7) (Miss. 2016) (quoting *Sewell v. State*, 721 So. 2d 129, 138 (¶50) (Miss. 1998)). "An error in the admission or exclusion of evidence is not grounds for reversal unless the error affected a substantial right of a party." *Martin v. State*, 266 So. 3d 652, 667 (¶33) (Miss. Ct. App. 2018) (quoting *Moore v. State*, 1 So. 3d 871, 876 (¶18) (Miss. Ct. App. 2008)).
>
> The admission of expert testimony is also reviewed under the abuse-of-discretion standard. *Clark v. State*, 315 So. 3d 987, 993-94 (¶6) (Miss. 2021). "Therefore, the decision of a trial court will stand 'unless we conclude that the discretion was arbitrary and clearly erroneous, amounting to an abuse of discretion.'" *Id.* (quoting *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 34 (¶4) (Miss. 2003)).

## ANALYSIS

### I. Did the trial court err by denying Smith's motion for a continuance after the State produced a supplemental notice of expert testimony on the morning of the first day of trial?

¶10. On the first day of trial, the case was called, and all parties announced they were ready for trial. Voir dire was conducted, and a petit jury was selected, impaneled, and sworn. Opening statements were made by the State and two of the defendants.[1] Smith reserved his opening statement until the beginning of his case-in-chief. At this point, for the first time, Smith's counsel brought before the court what he believed to be a discovery violation by the State.

¶11. Smith argued that the Mississippi Rules of Criminal Procedure were violated and that

---

[1] Smith was jointly indicted with Nathan Lollis and Charles Lee Wells. All three were jointly tried in this preceding.

the State committed "trial by ambush" by filing a "State's Supplemental Notice of Expert Testimony"[2] between 8:30 a.m. and 9 a.m. immediately before the case was called for trial that day. Smith's counsel asked that Officer Cavin not be allowed to testify as an expert, that his Google map and opinions be stricken, that his testimony not be allowed, and that the charges against Smith be dismissed.

¶12.   The State responded that they obtained the AT&T records through a subpoena and timely produced the phone records in discovery. According to the State, Smith's counsel had possession of the records months before trial. Two days before trial, the State realized that Officer Cavin could utilize the information contained in those records to produce a map indicating the location of both Smith's and Newton's cell phones on the day of Newton's death. The prosecutor advised the court that he emailed notice on the Sunday night before the Tuesday trial to inform defense counsel that Officer Cavin would be called as an expert witness. The map that Officer Cavin intended to use at trial was created on the night before the trial and was given to counsel on the morning of trial. The State argued that the information was provided to Smith's counsel as it was discovered and readily available to the State.

¶13.   Smith then argued that this amounted to trial by ambush. He argued that the phone records speak for themselves and there was no need "to have a police officer from Natchez here to explain something to the jury." Smith again objected to Cavin testifying as an expert

---

[2] Smith's counsel asked that the notice and "some Google information" that he was handed with the notice be placed into the record. The trial judge ordered that it be made an exhibit to the motion. The transcript reflects that "Exhibit No. 1 was marked for identification." However, this exhibit is not found in the record on appeal.

witness and being able to give opinion testimony.

¶14. The trial court recognized that Smith's objection had two parts. The first part concerned the phone records themselves and whether they had been timely produced in discovery. The second part concerned the testimony regarding the plotting of the location of the phones by latitude and longitude. At that point the trial judge stated:

> I'm going to take this under advisement. I don't want this presented today. I may give an option to having the map presented with information on it without a witness or if the witness is allowed to testify it will be very limited with this right here on the record where is that location on the map.

Smith's counsel advised the trial court that the State "would agree to a continuance and allow [him] several days within which to prepare for this testimony." The trial judge responded:

> That's well and good, but I don't accept the continuance. Now, Mr. Dowdy, if you were to consult with someone what would it be to find out whether they made mistakes about given a longitude and latitude? . . . So what would you do with a continuance? What would that give you?

In response, Smith's counsel stated:

> I would start with the authentication by AT&T. This [is] a certificate of authenticity of domestic records pursuant to Federal Rules of Evidence 902-13. I would make sure that [it] complies with Mississippi.

Finally, the trial judge held:

> That's a question of law. You can do that this evening, and I will look at this too and everything. I don't see the need to continue the trial. We can proceed today. I'm not going to let them get into those records today, but I will withhold ruling about exactly how this is going to be presented whether the witness will present it or whether the map itself will just be presented. That will be the Court's ruling on the matter.

¶15. At the close of the first day of trial, the court sustained the defense's objection to the extent that Cavin would not be allowed to testify as an expert witness or give opinion

7

testimony. However, the trial court ruled that Cavin could provide lay testimony concerning how he plotted longitude and latitude coordinates from the phone records onto a map to show where the phones were at the given times.

¶16. The following day, when the State moved to introduce the phone records into evidence during Grayson's testimony, Smith's counsel made no additional objection to the records being admitted.[3] Later, Cavin testified as a lay witness regarding the process he used to get the longitude and latitude coordinates from the phone records and input that information into Google Earth to generate a printed map. Cavin testified about using the map that he had created to show that Newton's and Smith's cell phones were near each other during the evening Newton died. Smith raised no objection to Cavin's testimony and made no request for a continuance.

¶17. The procedure to address a discovery violation established by *Box* and its progeny has been adopted by the Mississippi Rules of Criminal Procedure. Rule 17.9(b) states in part:

> If, during the course of trial, the prosecution attempts to introduce evidence which has not been timely disclosed to the defense as required by these Rules and the defense objects to the introduction for that reason, the court shall:
>
> > (1) Grant the defense a reasonable opportunity to interview the newly discovered witness and/or examine the newly produced documents, photographs or other evidence.
> >
> > (2) If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances,

---

[3] During the hearing on Smith's motion, the State argued that the defense had been in possession of the cell phone records for months. The certificates of authenticity that Smith questioned were dated in September and November 2018. The defense failed to show that the State had not disclosed the actual cell phone records in a timely fashion.

exclude the evidence, grant a continuance for a period of time reasonably necessary for the defense to meet the non-disclosed evidence, or grant a mistrial.

(3) The court shall not be required to grant either a continuance or mistrial for such a discovery violation if the prosecution withdraws its efforts to introduce such evidence.

MRCrP 17.9(b). In *Tugle v. State*, 68 So. 3d 691, 697 (¶26) (Miss. Ct. App. 2010), after the

defense had been given a "reasonable opportunity" to address the tardy discovery, this Court,

quoting the Mississippi Supreme Court, stated:

When the State fails to follow discovery procedures a reversal is not warranted in every case. *Box v. State*, 437 So. 2d [19,] 21 [(Miss. 1983)]. This Court has held that "[n]on-discovered evidence may be admitted at trial if the party against whom that evidence is offered is given a reasonable opportunity to make adequate accommodation." *Robinson v. State*, 508 So. 2d 1067, 1071 (Miss. 1987).

(Quoting *Randolph v. State*, 852 So. 2d 547, 564 (¶52) (Miss. 2002)). We then explained:

The trial court followed these guidelines and granted Tugle's defense counsel time to review Brassel's former testimony. Additionally, Tugle's defense attorney effectively abandoned his objection based upon the prosecution's alleged discovery violation.[4]

*Id.*

¶18.    In the case at hand, the trial court followed the directive set forth in Rule 17.9 and

gave Smith a "reasonable time" to consider Cavin's proposed testimony and the certificate

of authenticity of the phone records. The trial court first ruled that Cavin would not be

allowed to testify as an expert or give opinions. He was not allowed to testify on the first day

of trial and Smith was given the overnight recess to consider Cavin's proposed testimony and

---

[4] Tugle subsequently challenged the admissibility of the evidence on grounds other than as a discovery violation.

9

to consider the certificates of authenticity for the phone records. On the second day of trial, Smith's counsel made no further objection to the authenticity of the records as they were being introduced into evidence. Further, Smith raised no objection to Cavin's testimony and did not request a continuance after reviewing the information provided. This issue is without merit.

## II. Did the trial court err by allowing Officer Cavin to testify as a lay witness regarding "cell phone location technology" rather than testifying as an expert witness?

¶19. Smith contends that the trial court erred by allowing Cavin to testify as a lay witness. Smith cites *Collins v. State*, 172 So. 3d 724 (Miss. 2015), and argues any testimony regarding phone location technology requires expert testimony. The State argues that the case at hand is more similar to *Manning v. State*, 269 So. 3d 216 (Miss. Ct. App. 2018). In *Manning*, this Court stated:

> The State notes that Watson's testimony is markedly distinguishable from the testimony that the Supreme Court warned against in *Collins*. We agree. The detective's testimony in *Collins* purported to pinpoint the general area that the cell phone users were located. Here, Watson merely placed the coordinates from the records supplied by T-Mobile into Google maps. Watson's testimony was not complex or technical, necessitating specialized knowledge or training. . . . Therefore, we find that the admission of Watson's testimony was not in error.

*Id*. at 220 (¶16). The facts in *Manning* are nearly identical to the facts in the case at hand. Cavin testified that he took the longitude and latitude coordinates from Newton's and Smith's phone records that had been provided by AT&T and entered them into Google Earth. The trial court allowed him to testify only about the location of the phones, not the location of the phones' owners. Just like in *Manning*, Cavin's testimony "was not complex or

technical, necessitating specialized knowledge or training." Therefore, we find no error by the trial court in allowing Cavin to testify as a lay witness.

## CONCLUSION

¶20.    After reviewing the record, we find no error by the trial court in refusing Smith's request for a continuance due to a discovery violation or for allowing Cavin to testify as a lay witness at trial. Therefore, Smith's convictions and sentences for conspiracy to commit murder and first-degree murder are affirmed.

¶21.    **AFFIRMED.**

**BARNES, C.J., CARLTON, P.J., GREENLEE, LAWRENCE AND McCARTY, JJ., CONCUR.  WILSON, P.J., AND McDONALD, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.  WESTBROOKS, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. SMITH, J., NOT PARTICIPATING.**